UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEARTS ON FIRE COMPANY, LLC,

    Plaintiff,

    vs.

BLUE NILE, INC.

    Defendant.

CIVIL ACTION NO. 08-CA-11053-NG

## HEARTS ON FIRE COMPANY, LLC'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

### INTRODUCTION

This case involves the willful and systematic violation of the trademark rights of Hearts On Fire Company, LLC ("HOF") by one of its direct competitors, Blue Nile, Inc. ("Blue Nile"). The Complaint alleges that with full knowledge of HOF's rights in its name and trademark HEARTS ON FIRE® (the "HOF Trademark"), Blue Nile has used the HOF Trademark to divert consumers in search of HOF's products to its own website. Blue Nile's partial motion to dismiss asks this Court to dismiss a subset of facts alleged in support of HOF's claims, not the claims themselves. This approach is unsupported by case law or common sense. The Complaint alleges an integrated course of conduct that supports HOF's claims for trademark infringement, unfair competition, and unfair and deceptive acts and practices. Accordingly, Blue Nile's partial motion to dismiss must be denied.

### SUMMARY OF FACTS ALLEGED IN COMPLAINT

*The Hearts on Fire Trademark*

HOF is a leader in the distribution of branded diamonds and jewelry– i.e., diamonds and

jewelry that are identified by source-designating trademarks, which are extensively promoted. Complaint at ¶ 10-11. HOF sells to authorized retailers at numerous retail locations throughout the world, including over 600 locations in the United States. Id. at ¶ 12. HOF also promotes its diamonds and jewelry on-line through a website located at www.heartsonfire.com. Id. at ¶ 13. Many of HOF's authorized retailers also sell HOF diamonds and jewelry on-line at their own web sites. Id.

HOF is the owner of a number of trademarks and service marks, including the trademark HEARTS ON FIRE® (the "HOF Trademark"). Id. at ¶14. HOF has used the Trademark since at least as early as 1996. Id. The mark HEARTS ON FIRE® is registered with the United States Patent and Trademark Office under Reg. Nos. 2,119,886 and 2,686,511 for gemstones and jewelry, respectively. Id. HOF has also registered the mark HEARTS ON FIRE® in many other countries throughout the world. Id.

HOF has made a substantial investment in the promotion and protection of the HOF Trademark and considers it among its most important and valuable assets. Id. at ¶ 15. HOF has the exclusive right, among other things, to exploit commercially the Trademark and to bar use by third parties of any substantially similar marks. Id. Through extensive and continuous sales, promotion, and use, the Trademark has come to be associated with HOF and identifies HOF as the source of the goods and services offered in connection with the mark. Id. at ¶ 16.

**Blue Nile's Use of the Trademark**

Blue Nile, an internet retailer of diamonds and fine jewelry containing diamonds, sells its products through a website located at www.bluenile.com. Id. at ¶¶ 3, 17, 18. Although it is not an authorized retailer of HOF diamonds and jewelry, Blue Nile has used HOF's Trademark on the internet to divert potential consumers of HOF diamonds and jewelry to its own website. Id.

at ¶¶ 3, 20, 21. By doing so, Blue Nile has intentionally and deliberately misappropriated the goodwill that HOF has built into the Trademark and has otherwise undertaken a course of conduct that deceives the consuming public. Id. at ¶ 26, 27.

Specifically, Blue Nile purchased the search term hearts on fire from webcrawler.com[1] in an effort to direct internet users to its own products. Id. at ¶ 21. When a computer user at webcrawler.com types in hearts on fire to search the internet for HOF's diamonds, one of the high ranking search results is a sponsored link to www.bluenile.com. Id. The link states "Ideal Cut Diamonds at Blue Nile. Find hearts on fire diamonds at Forbes Favorite Online Jeweler. Sponsored by: www.bluenile.com." Id. Moreover, when the user clicks on the sponsored link, she is directed to Blue Nile's website www.bluenile.com. Id. at ¶ 22. When the user types in the term hearts on fire in the search engine for the www.bluenile.com website, she is directed to links to www.bluenile.com web pages selling diamonds and jewelry containing diamonds, none of which are HOF diamonds or jewelry. Id.

Given Blue Nile's use of the term hearts on fire at webcrawler.com, HOF believes and has alleged in the Complaint that Blue Nile may be using HOF's Trademark in other keywords, key word tags, meta tags, and sponsored links on the internet to divert internet consumers in search of HOF diamonds to www.bluenile.com, and two other websites it owns and operates, including www.bluenile.ca and www.bluenile.co.uk. Complaint at ¶ 22.

## ARGUMENT

### A.   The Sufficiency of The Complaint Must Be Tested Against All of the Facts.

In determining whether to dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept the allegations in the

---

[1] Webcrawler.com is an online search engine that searches other search engines, such as google.com or yahoo.com. Complaint at ¶ 21.

complaint as true, "extending . . . every reasonable inference in [the plaintiff's] favor." Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992). While a complaining party must do more than set forth a "formulaic recitation of a cause of action's elements," a complaint should not be dismissed where the plaintiff has alleged enough facts to state a claim that is "*plausible* on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965-1974 (2007) (emphasis added). Moreover, the Court's function on a motion to dismiss for failure to state a claim is not to weigh evidence which might be presented at trial, but merely to determine whether the complaint itself is legally sufficient. See Siniscalchi v. Shop-Rite Supermarkets, Inc., 903 F. Supp. 182, 186 (D. Mass. 1995) (holding); accord Wright & Miller, Federal Practice & Procedure, §1356.

The Complaint alleges that Blue Nile engaged in a course of conduct that included, among other things, purchasing the term hearts on fire as a search term to trigger sponsored links to the Blue Nile website. This allegation, which Blue Nile disingenuously refers to as "erroneous clutter" meant to "pad" HOF's Complaint, is, more accurately, one of the fundamental facts supporting HOF's claim that Blue Nile's willfully and systematically violated HOF's trademark rights. The Complaint alleges that Blue Nile used HOF's Trademark to divert potential HOF consumers to its own website by: (a) purchasing the term hearts on fire as a search term to trigger sponsored links to www.bluenile.com; (b) incorporating the HOF Trademark into its sponsored links; and (c) diverting consumers looking for HOF's products to its own website, where a search for the term hearts on fire directs users to web pages selling diamonds and jewelry containing diamonds, none of which are HOF diamonds or jewelry. In its motion to dismiss, Blue Nile asserts that HOF has failed to state a claim as to the conduct alleged in (a) and (c), but concedes that HOF has a valid cause of action as to Blue Nile's use of the HOF Trademark in the text of the sponsored links. Blue Nile's motion, therefore, asks that this Court

find that a subset of facts, though not the totality of the facts as alleged in the Complaint, fails to state a claim. Such slicing and dicing of HOF's Complaint is inappropriate: the sufficiency of the Complaint must be tested against *all* of the facts, not just those that suit the defendant.

Noticeably absent from Blue Nile's motion to dismiss is any authority (and HOF has found none) supporting the piecemeal approach urged upon this Court. Whether the conduct alleged in (a), (b), *or* (c), standing alone, states a claim is not the issue. On a motion to dismiss, the Court must accept as true *all* of the allegations in HOF's Complaint and determine whether those allegations state a valid claim for relief. The allegations set forth in (a), (b), and (c) are not separate claims or causes of action—they are facts that together state a claim for trademark infringement, statutory unfair competition, common law unfair competition, and unfair and deceptive acts and practices in violation of M.G.L. c. 93A. By attacking a subset of factual allegations, and not the sufficiency of the Complaint, taken as a whole, Blue Nile's motion seeks the type of relief one would expect to see in a motion *in limine* before trial, and not in a motion to dismiss. This unprecedented approach defies common sense, and Blue Nile's motion should be denied on its face, as the remainder of the motion is not worth the Court's time or attention.

**B.      In Any Event, the Complaint States a Valid Claim for Improper Sponsored Linking.**

Even if this Court were to indulge the defendant's efforts to dissect the Complaint and consider only certain facts in isolation, the Complaint nonetheless states a valid claim against Blue Nile for purchasing and using the term hearts on fire as a keyword term to trigger sponsored links to the Blue Nile website, where a further search using the term hearts on fire directs the user to webpages selling diamonds and jewelry. Aside from the threshold showing that it possesses a valid mark, a plaintiff alleging a Lanham Act violation must establish: (1) that the defendant has used its mark in commerce; and (2) that the allegedly infringing use is likely to

cause consumer confusion.[2]  See Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F. 3d 1, 12 (1st Cir. 2008) (citing Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006)); 15 U.S.C. § 1125.  Because the Complaint adequately asserts that Blue Nile has used the HOF Trademark in commerce in a way that is likely to cause consumer confusion, Blue Nile's motion to dismiss must be denied.

### 1.    Blue Nile Used the HOF Trademark in Commerce.

Online search engines enable advertisers to purchase or bid on certain keywords, including trademarked search terms, to trigger a sponsored link to a competitor's website.  This practice is often referred to as "sponsored linking" or "keyword advertising."  Most federal district courts, with the exception of federal district courts within the Second Circuit, have held that sponsored linking constitutes a "use in commerce" for purposes of trademark infringement claims.  See Boston Duck Tours, LP v. Super Duck Tours, LLC, 527 F. Supp. 2d 205, 207 (D. Mass. 2007) (finding "use" for trademark purposes and collecting cases on both sides of the issue); see also 800-JR Cigar, Inc. V. GoTo.com, Inc., 437 F. Supp. 2d 273 (D.N.J. 2006) (finding "use" where defendant traded on the value of the plaintiff's trademark by accepting bids from plaintiff's competitors, ranked paid advertisers ahead of other listings in the search results, and suggested search terms, including plaintiff's trademark, to plaintiff's competitors); International Profit Associates Inc. v. Paisola, 461 F. Supp. 2d 672 (N.D. Ill. 2006) (granting preliminary injunction to enjoin defendant from using plaintiff's name as a Google keyword to direct users to his websites, where he posted information critical of the plaintiff).  "[T]he emerging view outside of the Second Circuit" is that "[b]ecause sponsored linking necessarily

---

[2]  This opposition mirrors Blue Nile's motion to dismiss by focusing on the sufficiency of HOF's Lanham Act claims.

entails the use of the plaintiff's mark as part of a mechanism of advertising, it is a use for Lanham Act purposes." Id.

The Complaint alleges that Blue Nile purchased the search term hearts on fire from webcrawler.com and that it uses that term to trigger sponsored links to its own website. By purchasing the term hearts on fire from webcrawler.com and using it as a means to increase traffic on its own website, Blue Nile has utilized the HOF Trademark as a mechanism of advertising. As such, the Complaint states a viable cause of action against Blue Nile.

Blue Nile argues that HOF does not allege that Blue Nile actually used the HOF Trademark, and that HOF alleges use of only the distinct words "hearts", "on", and "fire". To this end, Blue Nile asserts that in order to state a trademark infringement claim relating to sponsored linking, HOF must allege that Blue Nile's sponsored link appears when a user searches for "hearts on fire" (with quotation marks), as opposed to hearts on fire (without quotation marks). This is a distinction without a difference. Blue Nile tellingly provides no case law or other authority suggesting that a sponsored link "use" exists only where a consumer puts the trademarked term inside quotation marks. Instead of case support, Blue Nile purports to present unverified, incompetent facts about the operation of internet search engines. Even if properly verified by a witness with personal knowledge, these facts would go well beyond the scope of what the Court may consider on a motion to dismiss.[3] As the facts of this case are developed, moreover, HOF will show that search engines sell terms to trigger sponsored links

---

[3] In its motion, Blue Nile cites to a footnote in Curley v. N. American Man Boy Love Ass'n, 2001 WL 1822730 (D. Mass. 2001, an unreported district court decision, for the proposition that a Court may consider websites that are central to or referenced in the Complaint. Blue Nile then goes on to suggest that this Court consider information concerning online searches culled from various sources, including infospace.com, google.com, yahoo.com and Microsoft Live, none of which are in any way central to, expressly referenced in, incorporated in, or attached to the Complaint.

when a user types in a term—here, hearts on fire—not in quotation marks. This is what the Complaint alleges, an allegation that must be assumed to be true at this stage of the case.

HOF has a trademark in the term hearts on fire without quotation marks -- and alleges that Blue Nile has used its trademark in exactly that form. Contrary to Blue Niles' assertions, HOF does not allege use of the distinct words "hearts," "on," and "fire." Such assertions by Blue Nile demonstrate its fundamental misreading of the Complaint, which could not be clearer: HOF alleges that (a) Blue Nile purchased the *term* hearts on fire to trigger a sponsored link to its website and (b) a sponsored link actually appears when a user types that *term* into the webcrawler.com search engine. HOF alleges that this result, calculated to exploit the good will that HOF has built into its trademark through years of extensive use and promotion, is exactly what Blue Nile intended.[4]

### 2.    Consumers Are Likely to Be Confused By Blue Nile's Use of the HOF Trademark.

#### (a)    Traditional Confusion

The Complaint sets forth sufficient allegations concerning the likely confusion caused by Blue Nile's sponsored linking. The First Circuit has "interpreted 'likely confusion' to mean 'more than the theoretical possibility of confusion.'" Boston Duck Tours, LP, 531 F. 3d at 12 (citing Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir. 1996)). Put differently, "the allegedly infringing conduct must create 'a likelihood of confounding an appreciable number of reasonably prudent purchasers

---

[4] The fact that the text of the sponsored link in question invites consumers to "[f]ind hearts on fire diamonds at Forbes Favorite Online Jeweler sponsored by www.bluenile.com" also shows that Blue Nile intended for its sponsored link to appear when users entered the term hearts on fire (without quotation marks) into the search engine at webcrawler.com. Likewise, the use of the HOF Trademark in the text of its sponsored link discredits Blue Nile's assertion that its website could have appeared as a high ranking sponsored link because certain pages on its website contain the words "hearts," "on," and/or "fire."

exercising ordinary care.'" Id. Although courts typically consider eight factors when evaluating whether a likelihood of confusion exists, those factors are "tailored to the evaluation of an allegedly-infringing mark" and are thus less instructive in cases, such as this one, where the claims involve the defendant's unauthorized use of the plaintiff's mark. Boston Duck Tours, LP, 527 F. Supp. 2d at 208. Furthermore, the likelihood of consumer confusion analysis is fact-intensive and is typically unsuitable for consideration on a motion summary judgment, let alone a motion to dismiss. See Echo Mail, Inc. v. American Express, Co., 445 F. Supp. 2d. 87, 93-94 (D. Mass. 2006) (denying the defendant's motion for judgment on the pleadings and concluding that a determination concerning the existence of consumer confusion requires a fact-intensive assessment whose determination would be in appropriate at such an earlier juncture in the proceedings).

In support of a contention that the Complaint falls short of alleging the requisite level of consumer confusion, Blue Nile relies on two factually inapposite cases: the Boston Duck Tours case decided by this Court in 2007 and J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC, 2007 WL 30115 (E.D. Pa. Jan. 4. 2007).

In J.G. Wentworth, the court held that the defendant's use of plaintiff's mark to trigger sponsored links to its website, though invisible to consumers, was nevertheless a trademark "use" for purposes of the Lanham Act. J.G. Wentworth, S.S.C. Ltd. P'ship, 2007 WL 30115 at *6. The J.G. Wentworth court, however, was unconvinced that such a use would result in an actionable likelihood of consumer confusion because the defendant's links did not incorporate plaintiff's marks in any visible way. Id. at *6-7. By contrast, in this case, Blue Nile has used HOF's mark in a visible way: the text of Blue Nile's sponsored link invited consumers to visit its website, where it could "find hearts on fire diamonds." This fact not only distinguishes the

present matter from J.G. Wentworth, it underscores the importance of considering the totality of Blue Nile's conduct.

In Boston Duck Tours, the Court was required to determine whether the defendant's sponsored linking violated a temporary injunction, which barred the defendant from using the term duck tours as a trademark or service mark in connection with its sightseeing tour service. Boston Duck Tours, LP, 527 F. Supp. 2d at 205. The Court determined that the defendant's purchase of sponsored links connected to the term boston duck tours did not violate the injunction because the injunction was meant merely to compel the defendant to adopt a new trademark, which it did. Id. at 208. As to the propriety of sponsored linking, more generally, the Court found that the defendant implemented a number of safeguards calculated to minimize the risk of consumer confusion, including a disclaimer that appeared on the defendant's website informing consumers that its services were not to be confused with those of the plaintiff. Id.

Unlike the defendant in Boston Duck Tours, Blue Nile has done nothing to minimize the likelihood of confusion experienced by consumers searching online for HOF's products. In fact, the Complaint alleges that Blue Nile's conduct was calculated to achieve the opposite result: to cause confusion, mistake, deception and to exploit the good will that HOF has built into its protected trademark. Complaint at ¶¶ 25-27. Put differently, whereas the defendant in Boston Duck Tours took steps to distinguish itself from the competition, the Complaint asserts that Blue Nile entered into a course of conduct, i.e. sponsored linking and use of the HOF Trademark in the text of its sponsored link, that was designed to mislead consumers into believing that they could find HOF's products on the Blue Nile website, a design furthered by the fact that a search for hearts on fire at bluenile.com itself directs the user to webpages selling diamonds and jewelry. The likelihood of consumer confusion is exacerbated by the fact (a fact not present in

Boston Duck Tours) that HOF sells its products online through authorized retailers, who operate their own websites. Blue Nile's high ranking sponsored link would likely cause a reasonably prudent consumer to think that Blue Nile was just another retailer of HOF products, as opposed to a direct competitor. The substantial likelihood of consumer confusion alleged by the Complaint is therefore more than merely plausible, it is virtually certain.

### (b)    Initial Interest Confusion

Even if a defendant's use of another's mark does not result in actual confusion, a likelihood of consumer confusion may still exist where a potential purchaser is misled into an interest in the defendant's product. See Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1238-9 (10th Cir. 2006); Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 290 F. Supp. 2d 241, 245-6 (D.R.I. 2003) (collecting cases where initial interest confusion was recognized as a valid theory of trademark infringement), *reversed on other grounds*, Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8 (1st Cir. 2004). This brand of confusion, known as "initial interest confusion," is particularly applicable in cases involving internet use, where confusion "derives from the unauthorized use of trademarks to divert internet traffic [to the defendant's own website], thereby capitalizing on a trademark holder's goodwill." Australian Gold, Inc., 436 F. 3d at 1239, and cases cited therein; see Playboy Enterprises, Inc. v. Netscape Communications Corp., 351 F.3d 1020 (9th Cir. 2004).[5] A sponsored link itself, even without the plaintiff's

---

[5] Although it is unclear whether the First Circuit recognizes the "initial interest" doctrine, other Circuits, including the Second, Third, Fifth, Seventh, and Ninth, have accepted initial interest confusion as a valid theory of trademark infringement. Beacon Mut. Ins. Co., 290 F. Supp. at 245-6 (D.R.I. 2003). Judges of the District of Massachusetts have issued varied and disparate rulings on the applicability of the "initial interest" doctrine. Compare EMC Corp. v. Hewlett-Packard Co., 59 F. Supp. 2d 147, 150 (D. Mass. 1999) (Tauro, J.) (noting that this Court has "endorsed the initial interest confusion theory"), and Big Top USA, Inc. v. Wittern Group, 998 F. Supp. 30, 52 (D. Mass. 1998) (Saris, J.)(holding that "the Lanham Act 'forbids a competitor from luring potential customers from a producer by initially passing off its goods as those of the producer's, *even if confusion as to the source of the goods is dispelled by the time any sales are consummated*'") (emphasis added), with Northern Light Tech. v. Northern Lights Club, 97 F. Supp. 2d 96, 113 (D. Mass. 2000) (Woodlock, J.) (holding that initial interest confusion is "not cognizable" under the First Circuit's trademark law).

trademark in its text, may cause "initial interest confusion" by <u>diverting</u> one searching for a particular product to a link to the website of a competitor. <u>See</u> <u>Google, Inc. v. American Blind and Wallpaper, Inc.</u>, Slip Copy, 2007 WL 1159950 (N.D. Cal. April 18, 2007) (finding sufficient evidence of a likelihood of confusion to avoid defendant's motion for summary judgment and holding that, although the sponsored links at issue did not contain plaintiff's marks, "the reasonable response of a consumer to these links remains a disputed issue of fact").

The Complaint alleges that Blue Nile's sponsored linking was designed to have such a bait and switch effect on consumers searching the internet for HOF products. HOF alleges that Blue Nile purchased the term hearts on fire from webcrawler.com so that the Blue Nile website would appear as a high ranking sponsored link when a consumer conducted an internet search for HOF's products. Although the use of the HOF Trademark in Blue Nile's sponsored link is an aggravating factor contributing to the likelihood of consumer confusion, that fact is not necessary to state a claim for initial interest confusion: the mere appearance of the sponsored link, with or without the HOF Trademark in its text, causes initial interest confusion, as it allows Blue Nile to unfairly associate itself with HOF and the goodwill built-in to the HOF trademark.

## CONCLUSION

Blue Nile would have this Court slice and dice the factual allegations set forth in the Complaint and determine whether a subset of facts alleged in the Complaint considered in isolation supports HOF's claims. This approach is improper. So, too, is Blue Nile's attempt to argue the intensively fact-based issue of the likelihood of confusion in a motion to dismiss. The Complaint alleges sufficient facts demonstrating both Blue Nile's willful use of the HOF Trademark and the likelihood that consumers would be confused by that use. Blue Nile's partial motion to dismiss must therefore be denied.

Respectfully submitted,

HEARTS ON FIRE COMPANY, LLC
By its attorneys,


 /s/ Bruce E. Falby
Bruce E. Falby (BBO #544143)
Robert P. Sherman (BBO #548540)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA  02110-1447
Telephone:  617.406.6000
Facsimile:  617.406.6100

Dated: September 8, 2008


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on September 8, 2008.

/s/ Bruce E. Falby
Bruce E. Falby